**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MAUREEN CLARK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No.: 2:16-cv-02228-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pending before the Court is the Motion for Conditional Certification, (ECF No. 53), filed by Plaintiffs Maureen Clark and Sonya Alexander (collectively "Plaintiffs"). Defendant Bank of America, N.A., ("Defendant") filed a Response, (ECF No. 56), and Plaintiffs filed a Reply, (ECF No. 58). Additionally, after obtaining leave from the Court, Defendant filed a Surreply, (ECF No. 61).[1]

## I. <u>BACKGROUND</u>

This case arises out of, *inter alia*, alleged Fair Labor Standards Act ("FLSA") violations, involving Defendant not compensating Plaintiffs "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." (Second Am. Compl. ("SAC") ¶ 4, ECF No. 52). Clark worked at Defendant's call center in Las Vegas, Nevada, from April 1999 to May 2016, and Alexander worked at the same call center from June 2005 to December 2015. (*See id.* ¶¶ 16, 17). According to Plaintiffs, they were employed as "hourly call center agents." (*Id.* ¶ 2). However, Plaintiffs also refer to their position as "hourly customer service agents." (*See, e.g.*, *id.* ¶¶ 12, 13). While working there, Plaintiffs

---

[1] Also pending before the Court is Defendant's Motion to Strike Plaintiffs' Reply, (ECF No. 59). However, after filing said motion, "the parties agreed to resolve these Objections and Motion to Strike, by permitting Defendant to file a Sur-Reply not exceeding three pages." (Surreply 2:26–28, ECF No. 61). Given the agreement between the parties, Defendant's Motion to Strike Plaintiffs' Reply is **DENIED as moot**.

allege that before they could clock-in for their shifts, they were required to "boot up and login to various computer programs, software programs, and applications in order to access required information and software," and that this process took "substantial time on a daily basis ranging from 5 to 10 minutes per day, and up to 30 minutes on days where their computers were not working properly." (*Id.* ¶¶ 19, 20). Because of this, Plaintiffs allege that Defendant deprived Plaintiffs and other members of the putative class of wages owed for their preliminary work activities. (*See id.* ¶ 30). Plaintiffs allege these collective action allegations on behalf of "[a]ll current and former hourly customer service agents who worked for Defendant at any time after September 21, 2013." (Mot. for Conditional Certification ("Mot.") at 1, ECF No. 53).

On June 22, 2018, Plaintiffs filed their Second Amended Complaint, (ECF No. 52), containing claims for (1) violation of the FLSA; (2) violations of NRS §§ 608.016, 608.018, and 608.260. Plaintiffs also filed the instant Motion for Conditional Certification and Court Authorized Notice to Potential Opt-in Plaintiffs, (ECF No. 53), pursuant to 29 U.S.C. § 216(b).

## II.   **LEGAL STANDARD**

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). While a plaintiff may bring an action on behalf of himself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." *Id.* "Although § 216(b) does not require district courts to approve or authorize notice to potential plaintiffs, the Supreme Court held in *Hoffman-La Roche* that it is 'within the discretion of a district court' to authorize such notice." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, (1989)). "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096

(11th Cir. 1996) (alteration in original) (internal quotation marks omitted). "[P]laintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Id.* at 1097. "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal quotation marks omitted).

The FLSA does not define "similarly situated." A majority of courts have adopted a two-step approach for determining whether a class is "similarly situated." *See Padan v. W. Bus. Sols., LLC*, No. 2:15-cv-00394-GMN-CWH, 2016 WL 304303, at *2 (D. Nev. Jan. 25, 2016); *Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-1009-JCM-PAL, 2014 WL 2573899, at *3 (D. Nev. June 6, 2014); *Fetrow-Fix v. Harrah's Entm't Inc.*, No. 2:10-cv-00560-RLH-PAL, 2011 WL 6938594, at *6 (D. Nev. Dec. 30, 2011); *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 992–93 (C.D. Cal. 2008); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *Pfohl v. Farmers Ins. Grp.*, No. 2:03-cv-03080-DT-RC, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004). This approach involves notification to potential class members of the representative action in the first stage followed by a final "similarly situated" determination after discovery is completed.

"Since this first determination is generally made before the close of discovery and based on a limited amount of evidence, the court applies a fairly lenient standard and typically grants conditional class certification." *Misra*, 673 F. Supp. 2d at 993 (citing *Leuthold*, 224 F.R.D at 467; *Pfohl*, 2004 WL 554834, at *2). At the initial notice stage, "a plaintiff need only make a 'modest factual showing sufficient to demonstrate that [the putative class members] were victims of a common policy or plan that violated the law.'" *Id.* If the court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in" by a certain deadline. *Id.*

The second stage determination is held after discovery is complete and the matter is ready for trial. *Id.* At this stage, the court can make a factual determination on the similarly situated question by weighing such factors as: "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural consideration." *Id.* (citing *Pfohl*, 2004 WL 554834, at *2). If the claimants are similarly situated, the collective action proceeds to trial. *Id.* If claimants are not similarly situated, the court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. *Id.*

### III. <u>DISCUSSION</u>

Plaintiffs seek certification of a collective action for their FLSA claim alleging that Defendant "failed to pay [call center agents] for preliminary activities which directly benefited Defendant," and which are "an essential part" of a customer service agent's job responsibilities. (Mot. at 5, ECF No. 53) (alteration removed). In support, Plaintiffs provide their own declarations, (ECF Nos. 53-3, 53-4); declarations from two opt-in plaintiffs, Cameron McDonald and Shanece Chongling, (ECF Nos. 53-5, 53-6); a fact sheet from the Department of Labor concerning the application of the FLSA to employees working in call centers, (ECF No. 53-7); and an order entered by this Court in an unrelated collective action, (ECF No. 53-8). Moreover, attached to their Reply, Plaintiffs submit three collective action complaints filed against Defendant in other federal district courts, (ECF Nos. 58-1, 58-2, 58-3). Plaintiffs offer this evidence to demonstrate that the putative class members were victims of Defendant's common scheme and practice of failing to pay wages for compensable pre-shift activities, thereby violating the law. *See Misra*, 673 F. Supp. 2d at 993; (Mot. 2:14–15).

In his declaration, McDonald states that he worked as an hourly call center agent from February 3, 2014, to December 4, 2015, at the Las Vegas, Nevada call center. (McDonald Decl., ECF No. 53-5). McDonald makes allegations similar to Plaintiffs', stating that

Defendant failed to pay hourly call center agents overtime wages for pre-shift work performed. (*Id.*). In her declaration, Chongling states that she has worked as a call center agent in Defendant's Newark, Delaware call center since June 11, 2011. (Chongling Decl., ECF No. 53-6). She similarly states that Defendant failed to pay hourly call center agents, including herself, overtime wages for pre-shift work performed. (*Id.*). She adds, among other things, that she "[has] met and come to know numerous other call center agents employed at Bank of America's Newark call center and other locations," and that she has had "numerous conversations with these call center agents about Bank of America's compensation policies, and its failure to pay call center agents for work performed in connection with the pre-shift work[.]" (*Id.*).

Defendant argues that the collective action cannot be certified because the proposed class members are not similarly situated. (Resp. 12:22–13:7, ECF No. 56). Defendant asserts that many of its call centers have "employees in different lines of business, sub-lines, and divisions working in them, in roles specific to the part of the business they support, and with their own management teams." (*Id.* 3:1–10). Moreover, Defendant argues that Plaintiffs' and opt-in plaintiffs' experience and observations were confined to Defendant's Las Vegas, Nevada call center and Newark, Delaware call center. (*Id.* 18:26–19:2). Defendant further argues that Plaintiffs have "failed to define the employees or positions they seek to include in their collective action in a reasonably-ascertainable way. Plaintiffs' proposed collective definition is 'All current and former hourly customer service agents who worked for Defendant . . . .'" (*Id.* 12:24–27). Defendant contends that "Plaintiffs, however, never held any position of 'customer service agent' and no such position even exists at [Defendant's call] centers." (*Id.* 12:27–28). Therefore, according to Defendant, it is "a mystery what positions are meant to be included" in light of the fact that it does not have a "customer service agent" position. (*Id.*).

Defendant further contends that its company policies and procedures at each of its call centers strictly prohibit off-the-clock work. (*See, e.g.*, *id.* 15:23–16:19).

In cases where courts declined to conditionally certify a putative class, extensive discovery justified a detailed factual inquiry otherwise reserved for the second "decertification" stage. *See, e.g.*, *Luksza v. TJX Companies, Inc.*, No. 2:11-cv-01359-JCM-GWF, 2012 WL 3277049, at *8 (D. Nev. Aug. 8, 2012) ("[W]here the parties have had an opportunity to conduct pre-certification discovery, courts tend to hold plaintiffs to a higher standard of proof."). Because the instant litigation is at the first "notice" stage and there has been no significant discovery, the Court will apply the lenient standard to Plaintiffs' motion, requiring only that Plaintiffs "make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law." *Lewis v. Nevada Property 1, LLC*, No. 2:12-cv-01564-MMD-GWF, 2013 WL 237098, at *7 (D. Nev. Jan. 22, 2013).

The Court finds that Plaintiffs and their two supporting declarants, McDonald and Chongling, have made a sufficient threshold showing that they are similarly situated to the putative class members for purposes of conditional certification of a nationwide class and first stage notice. Declarants employed at Defendant's Nevada and Delaware call centers claim that they were similarly situated insomuch as they were subject to the same off-the-clock employment practices. They claim that this policy or practice actually existed notwithstanding Defendant's written policies and procedures and the contrary declarations of Defendant's call center's other customer service representatives. (*See* McDonald Decl. ¶ 14); (Chonling Decl. ¶ 14). Defendant's arguments to the contrary are more appropriate for the second stage determination. *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 841 (N.D. Cal. 2010) ("[S]everal courts have indicated that individualized inquiries . . . are better to address at the second stage of certification rather than the first."). Accordingly, the Court grants conditional certification. However, the Court finds that given that Plaintiffs and their declarants most often

refer to their respective employment positions as "hourly call center agent," the certified collective definition shall be modified accordingly, as this is a more accurate description.

### A. Form of Collective-Action Notice

When an FLSA collective action is conditionally certified, a district court may authorize the named plaintiffs to send notice to "all potential plaintiffs" and "may set a deadline for plaintiffs to join the suit by filing consents to sue." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Hoffmann–La Roche Inc.*, 493 U.S. at 169–72. Plaintiffs attached their proposed notice and consent-to-sue form as Exhibit A to the Motion for Conditional Certification, (ECF No. 53-1). Defendant objects to Plaintiffs' proposed notice for the following reasons: (1) the collective time period should be limited to "the two-year period of time looking backwards from the date the court enters its order"; (2) home addresses of the potential class members are sufficient for dissemination of notice; (3) the notice lacks neutrality and is biased because while it sets forth the substance of the claims and remedies sought, it only contains a conclusory statement about Plaintiffs' denial of the claims; and (4) Plaintiffs' notice fails to inform potential plaintiffs of their responsibilities if they choose to opt in to the lawsuit. (Resp. at 20–22). Based on these objections, Defendant requests that the Court deny Plaintiffs' proposed notice and order a meet and confer regarding the notice's proper form and content. (*Id.* at 21). While the Court does not agree with each of Defendant's objections, the Court orders a meet and confer to address and remedy the deficiencies identified below.

#### *1. Proposed Collective Time Period*

Defendant argues in favor of limiting the collective time period to "the two-year period of time looking backwards from the date the court enters its order." (Resp. at 20). Defendant further argues that even if the notice were to be sent using a three-year period, and factoring in

the parties' tolling agreement, (ECF No. 41), the proposed beginning date of September 21, 2013, would still fall outside the scope. (*Id.*).

Plaintiff replies that:

> Although Defendant acknowledges that the parties have agreed to tolling for the putative collective from December 7, 2016 through October 18, 2017 for employees who worked outside of Nevada and Delaware, and (2) from December 7, 2016 through the date the Court rules on Plaintiffs' Motion for those employees who did work in Nevada or Delaware, it nonetheless objects to a notice period spanning back to September 21, 2013[.]

(Reply at 11, ECF No. 58). The parties shall adhere to their tolling agreement, (ECF No. 41), and calculate the collective time period based on a three-year statue of limitations. *See Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1148 (D. Nev. 2016); *see also Desio v. Russell Rd. Food & Bev.*, LLC, No. 2:15-cv-01440-GMN-CWH, 2017 U.S. Dist. LEXIS 162609 (D. Nev. Sep. 29, 2017).

### *2. Scope of Contact Information*

Plaintiffs seek an order from the Court directing Defendant to provide them with a list identifying each potential opt-in plaintiff by full name, last known address, telephone number, and e-mail, and dates and locations of employment of all potential opt-in plaintiffs. (Mot. at 14). Defendant responds that home addresses are sufficient for the dissemination of the notice. (Resp. at 21). Defendant also adds that providing the requested information would improperly impact employees' privacy rights.

The Court finds that home addresses are sufficient for the dissemination of the notice. Defendant must provide Plaintiffs' counsel with the names and last-known addresses of all employees covered by the collective action in an electronic and importable format, and within thirty days of the entry of this Order.

///

### *3. Bias and Lack of Neutrality*

Defendant states that the notice is biased because it sets forth the substance of Plaintiffs' claims and the damages sought. Defendant further states that the notice should include a substantive explanation of Defendant's positions as to the various claims by Plaintiffs. (Resp. at 21). However, Defendant fails to propose any language to cure the purported deficiency. Nevertheless, the Court does not find the notice is biased in that in this regard.

While Defendant references a lack of neutrality, Defendant fails to cite any reasons for its contention that the notice is not sufficiently neutral. Nevertheless, the Court finds that the first sentence of paragraph 3 of the notice should be removed as it could be perceived as an endorsement from the Court.[2] In *Hoffmann–La Roche Inc. v. Sperling*, the Supreme Court cautioned, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174. A statement indicating that the Court authorized the notice to be distributed creates the appearance of judicial endorsement of this action instead of just the form of the notice and the persons eligible to receive it.

### *4. Information Regarding Opt-in Plaintiffs' Responsibilities*

Defendant complains that Plaintiffs' notice fails to inform potential plaintiffs of their responsibilities if they choose to opt into the lawsuit. (Resp. 22:1–13). Defendant emphasizes that "[a]ny notice approved by the Court should inform putative class members that if they join the lawsuit, they may be required to produce documents, respond to written questions, sit for depositions, and testify in court in Las Vegas if the case proceeds to trial or their testimony is otherwise necessary." (*Id.*). However, the proposed notice indicates that "[w]hile this lawsuit is

---

[2] The sentence currently states: "The United States District Court for the District of Nevada has authorized this Notice to be distributed to: . . ." (Proposed Notice, Ex. A to Mot., ECF No. 53-2). Instead, the notice must use neutral language, such as, "This Notice is distributed to: . . ."

proceeding, you may be required to respond under oath to written questions, to have your deposition taken, to produce documents, and/or to testify in court at a trial or hearing in the United States federal courthouse in Las Vegas, Nevada." (Proposed Notice, Ex. A to Mot). Because the language in the proposed notice is substantially similar to that suggested by Defendant, the Court rejects Defendant's contention. (*Id.*).

### 5. *Length of Opt-in Period*

Plaintiffs have requested an opt-in period of at least sixty days. They explain that they anticipate difficulties in locating opt-in plaintiffs given the employee demographics and substantial employee turnover in Defendant's industry. (Mot. at 15). Defendant does not offer an opinion on the subject. The Court finds a sixty-day opt-in period is reasonable in light of the circumstances described by Plaintiffs.

### 6. *Proposed Collective*

As discussed above, the proposed collective definition must be modified to use the term "hourly call center agents." The consent-to-sue form must also be revised accordingly.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification, (ECF No. 53), is **GRANTED in part** and **DENIED in part**. The Court grants certification consistent with the foregoing. The Court denies the proposed court-authorized notice and consent-to-sue form.

**IT IS FURTHER ORDERED** that the parties must meet and confer to correct the deficiencies identified herein. The parties must then resubmit the proposed notice and consent-to-sue forms within fourteen days of the entry of this Order, for the Court's approval. Upon the Court's approval of the notice and consent-to-sue forms, Plaintiffs must serve them by first-class mail.

**IT IS FURTHER ORDERED** that Defendant must provide Plaintiffs' counsel with the names and last-known addresses of all employees covered by the collective action in an electronic and importable format, within thirty days of the entry of this Order.

**IT IS FURTHER ORDERED** that the potential plaintiffs shall have sixty days from the date of mailing of the notice and consent-to-sue forms to submit their opt-in forms.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 59), is **DENIED as moot**.

**DATED** this __31__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court